THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARTÍN RAMOS ET AL., Defendants and Appellants.

No. 7999. Argued March 27, 1940.—Decided April 26, 1940.

*Rafael Arroyo Ríos* and *Luis Pereyó* for appellants. *R. A. Gómez,*
*Prosecuting Attorney (fiscal),* for appellee.

Mr. Justice Traviso delivered the opinion of the court.

The information in the instant case charges the defend ants with a violation of subdivision (a) of section 2, in connection with section 4, of Act No. 63 of 1931, consisting in that "in the city of Naguabo, within the Judicial District of Humacao, P. R., unlawfully, wilfully and maliciously, they kept and offered for sale a drug, to wit: camphorated oil, (known by such name in the U. S. Pharmacopeia), and such drug, so kept and offered for sale as pure by the defendants, differed in strength, quality and purity from the standard drug (camphorated oil), such as the same is defined and expressed in the U. S. Pharmacopeia, according to the tests appearing in the formulary at the time of the investigation; inasmuch as it appeared from an analysis of the drug (camphorated oil), kept and offered for sale as pure by the defendants, that such camphorated oil did not contain between 19 and 21 per cent of camphor as required by the U. S. Pharmacopeia, its strength being only 16.34 per cent."

After a demurrer to the information on the ground that the same failed to allege that the drug had been misbranded was overruled, and a motion for a bill of particulars from the prosecution was denied, the case went to trial. Upon conviction of the defendants, the court sentenced each of them to pay a $25 fine or to imprisonment in default of payment.

In their appeal the defendants have assigned as errors commited by the trial court the overruling of the demurrer and the erroneous weighing of the evidence.

 Section 4 of Act No. 63 of 1931 defines the offense as follows:

"Any person who shall manufacture, sell, or offer or have for sale, or who shall transport or store any article of food or drugs. which is adulterated or misbranded, within the meaning of this Act,. shall be guilty of misdemeanor and punishable by a fine of not less: than twenty-five (25) nor more than one hundred (100) dollars.'"

Section 2 of the above act provides that:

"For the purposes of this Act, an article shall be deemed to . be adulterated—

"(a) In case of drugs:

"(1) If, when a drug is sold under or by a name recognized in the United States Pharmacopeia or National Formulary, it differs from the standard of strength, quality, or purity, as determined by the test laid down in the United States Pharmacopeia or National Formulary official at the time of investigation; *Provided,* That no drug defined in the United States Pharmacopeia or National Formulary shall be deemed to be adulterated if another standard is plainly stated on the label thereof, although said standard may differ from that determined in the United States Pharmacopeia or National Formulary."

The information filed against the defendants and appellants is, to our judgment, sufficient to inform them that the offense charged against them is the keeping and offering for sale of adulterated camphorated oil.

In *People* v. *Marín,* 54 P.R.R. 620, the question of the sufficiency of the information was presented in a form altogether different from that in the instant case. Marín was charged that he "had for sale and for purposes of human consumption, commercial almond oil adulterated with cottonseed oil and other foreign oils, among them peach and apricot seed-oil." A demurrer was presented on the ground that the information must not merely follow the language of the statute, and it was therein alleged that the information would have been sufficient if it had been alleged therein that the defendant was selling under the name of "commercial almond

oil,'' as defined by the Pharmacopeia or National Formulary, a product which differed from the standard of strength, quality, or purity, as determined by the tests laid down in the formulary applicable at the time of the commission of the alleged offense, which is the time of the investigation referred to in the act.

In reversing the judgment in the above case, this court, through Mr. Justice Wolf, expressed itself as follows:

"This argument suggests rather than clearly brings forth the insufficiency of the information. What we find on examining the information is that it fails to set forth the facts that constitute adulteration but assumes them. The pleading should have set forth, as appellant suggests, that the commercial almond oil sold by him fell below the official standard of purity referred to in the Act, or .ought to have stated that the addition of the substances mentioned in the information made the product fall below the professed standard .or quality required. The information is insufficient.''

The information in the case at bar conforms to the rule laid down in the *Marín* case, *supra*. It contains, specifically alleged, all such facts as under section 2(*a*), *supra,* must coexist so that a drug may be considered as being ''adulterated.'' The information is sufficient and so clear and specific in its allegations that the defendant did not really need at all the bill of particulars which he requested. The defendants are charged thereby with the commission of the first modality of the offense defined in section 4 of Act No. 63, *supra,* that is, keeping and offering for sale an adulterated drug.

 The district attorney is not compelled to allege that the label under which camphorated oil was being sold did not clearly express a different standard, even though distinct from the standard fixed in official formularies. It was upon .the defendants that it devolved to allege and show that the camphorated oil kept and offered for sale by them and which differed as to strength, quality and purity from the official standard, could not be considered as ''an adulterated drug''

because the label under which the oil was offered by them to the public plainly expressed its true contents.

■ It was not necessary for the information to allege that the camphorated oil was "misbranded," because no violation was charged of the second modality of the offense punished under section 4, viz., keeping and offering for sale a misbranded drug.

■ We have carefully considered the evidence and find that it is amply sufficient to sustain the information. The samples of camphorated oil taken by the health inspectors and analyzed in the laboratory of the Department of Sanitation differed from the official standard, for they only contained 16.34 per cent of camphor instead of between 19 and 21 per cent.

The fact that the oil taken from the defendants was in the same condition in which they bought it in Blanco's pharmacy is no defense. Section 7 of Act No. 63 of 1931 itself prescribes the procedure to be followed by the seller of a drug to protect himself against a charge if the drug turned out to be adulterated. If the defendants had produced a written guaranty subscribed by Blanco's pharmacy to the effect that the oil bought by the defendants from said pharmacy was neither adulterated nor misbranded, the court then would have been compelled to discharge them. It does not appear from the record that such guaranty was produced.

The judgment appealed from must be affirmed.